[Civ. No. 2392. Second Appellate District, Division One.—November 20, 1919.]

JOHN LUCKENBACH, Appellant, v. M. LISSNER, Respondent.

[1] LANDLORD AND TENANT—ACTION FOR RENT—USE OF PREMISES BY POLITICAL ORGANIZATION—NONCOMPLIANCE WITH PURITY OF ELECTIONS LAW—ERRONEOUS INSTRUCTION.—In an action against an individual to recover rent for the use of certain premises, it is error to direct the jury to return a verdict in favor of the defendant on the theory that the premises were rented for the use of a political organization and that the plaintiff had failed to present a claim to the candidate within ten days of the date of the election as required by the purity of elections law, where there is evidence which, if believed by the jury, would warrant a finding that the political organization occupied the premises solely under the authority and permission of the defendant, and that the defendant's lease from the plaintiff was a general lease having no relation to any candidate or election committee.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Reversed.

The facts are stated in the opinion of the court.

Drew Pruitt and W. Ona Morton for Appellant.

Schweitzer & Hutton for Respondent.

CONREY, P. J.—The action is brought to recover rent at the agreed rate of $150 per month for the use of the first and second floors of the Luckenbach Building, in the

city of Los Angeles, for a stated period of time; and also
to recover as rent the reasonable value of the use of the
fifth floor of said building, alleged to have been leased to
the defendant for a shorter period of time.   The case was
tried before a jury.   After all of the evidence had been re-
ceived, the court refused to give to the jury certain in-
structions requested by the plaintiff, and, instead thereof,
gave the following instruction, directing the jury to return
a verdict for the defendant:

"Gentlemen of the jury, this is an action brought by the
plaintiff to recover from the defendant a sum of money due
for rent of the premises at 317 South Hill Street, in the
city of Los Angeles.   The evidence is without conflict that
the purpose in renting these premises was for the use of
an organization called the Johnson for Senator Club, which
had its headquarters on the first and second floors and later
the fifth floor of the building.   Because of the fact there is
no conflict in the evidence as to the purpose for which the
building was rented, the only controversy being whether or
not the building was rented to the defendant Myer Lissner
or to the Johnson for Senator Club, the question as to
whether or not the claim is one coming within the statutes
of the state of California for the regulation of elections
known as the purity election law, the question becomes a
question of law.   The purity of election law contains a pro-
vision to the effect that any act or omission made an offense
under the general laws shall be a violation of the primary
election law.   This provision is found in section 32, subdivi-
sion 3, of the primary election law and reads as follows:

" 'Any act or omission declared to be an offense by the
general laws of this state concerning primaries and elections
shall also in like case be an offense concerning primary
elections as provided for by this act, and shall be punished
in the same manner and form as therein provided, and all
the penalties and provisions of the law governing elections,
except as herein otherwise provided, shall apply in equal
force to primary elections as provided for by this act.'

"Under this provision of the general law, referred to in
the primary law, and made a part of it, there is a provision
with regard to the payment of claims incurred by, or on
behalf of, a candidate at any election held in this state.
This provision makes it a misdemeanor for a candidate, or

committee, to pay any bill which is not presented to the committee or candidate as the case may be within a certain length of time after the holding of the election. The question involved in this case is whether or not it is a claim within the meaning of the provision of the statute which reads that every claim must be presented to such candidate within ten days of the date of the election. In determining that question it will be observed that under the provision of section 3 [sec. 29, subd. 4], the expenditure for the renting of rooms necessary for the transaction of the business of the candidate, or committee, is a proper expense for the candidate to incur. It is provided in the primary election law that every candidate at an election must file a verified statement of his expenses. This provision is found in section 30, of Act 1010, passed in 1913, on page 1379, the Statutes of 1913. Now, the question involved here is whether or not this bill contracted for the purpose of furthering the election of Governor Johnson as United States Senator, comes within the meaning of the law requiring that such bill be presented to the candidate within ten days after the date of the election. The court instructs you, that it does come under the provision of the law, and for that reason the court instructs you to return a verdict in this case in favor of the defendant.''

Upon the verdict returned by the jury in accordance with the foregoing instruction, judgment was entered in favor of the defendant. From that judgment the plaintiff appeals.

[1] If the evidence had shown without conflict that the plaintiff rented the premises to the defendant as the representative of the Johnson for Senator Club, or as the representative of the candidate, the case would have been appropriate for an instructed verdict and judgment in favor of the defendant. But there is evidence tending to prove that the premises were rented to the defendant as a person acting solely in his own behalf; both parties knowing, however, that defendant intended to have the premises occupied by the Johnson for Senator Club in connection with the candidacy of Governor Johnson for nomination and election to the office of United States senator. The plaintiff in his testimony admitted that defendant told him that the premises were to be used for headquarters for the purpose of promoting the candidacy of Governor Johnson. ''Q. He

told you that he was representing Governor Johnson or some organization looking toward that purpose? A. Yes, he was representing—but I didn't recognize that." According to plaintiff's testimony, he told defendant that he would not rent his space to any political organization or club, but would rent it to the defendant. The defendant said: "Well, I will rent the space." The plaintiff replied: "I will rent you the whole building if you want it, but not any political organization; I will do business with you personally, but nobody else."

Under this evidence and other evidence of similar character which was before the court, the jury might have found that plaintiff rented the premises in question to the defendant as an individual and not as a representative of any organization, and that the defendant under said agreement of lease had the authority and power to use said premises for any purposes he might have seen fit or proper, not contrary to law or public policy. Plaintiff requested the court to instruct the jury that if they did so believe, then that the defendant would be personally liable to plaintiff for the amount due for the rent in accordance with such agreement. The court refused this instruction and other requested instructions, and instead thereof gave the instruction which we have quoted. Evidently this was done upon the theory that since the plaintiff knew that the defendant intended to turn the premises over to a political organization to be used for the purposes stated in said instruction, that, therefore, the lease itself was necessarily for a political purpose and that rent could not be recovered thereon, except by complying with the provisions of the law for the regulation of elections, known as the purity of elections law.

In this we think the court erred. The owner of real property might allow his premises to be used by a candidate or an election committee without charging any rent therefor. The owner of a leasehold interest in a building might do the same thing; or, if he so desired, might rent such building to a candidate or committee for political purposes. In the latter case the rent would be due from the candidate or committee to the holder of the leasehold interest, and not to his lessor, the owner of the fee. Under such circumstances the person renting the building to the candidate or committee would be the person, and the only

person, who would be entitled to demand and collect the rent, subject to the limitations of the purity of elections law. If it be said that this leaves open an opportunity for evasion of the law, the answer must be that in cases where the facts establish an attempted evasion and where in reality the owner is leasing to a candidate or committee, but is using a nominal go-between as lessee for the purpose of evading the law, courts and juries should be able to deal properly with any situation of that kind. It is not necessary here to go further than to say that evidence was produced which, if believed by the jury, would have warranted it in finding that the Johnson for Senator Club occupied the premises solely under the authority and permission of the defendant, and that the defendant's lease from the plaintiff was a general lease having no relation to any candidate or election committee. That issue should have been presented to the jury under an appropriate instruction which would have permitted a verdict in favor of the plaintiff, if the jury had found in favor of the plaintiff on this issue of the fact.

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 19, 1920.

All the Justices concurred, except Wilbur, J., who did not participate.